UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

CIVIL ACTION NO. 5:14-CV-462-KKC

LEXEL IMAGING SYSTEMS, INC. and
CITIDAL PARTNERS, LLC                                                               PLAINTIFF

v.                          **OPINION AND ORDER**

VIDEO DISPLAY CORPORATION                                                           DEFENDANT

\*\* \*\* \*\* \*\* \*\*

This matter is before the Court on the motion for a temporary restraining order or injunction (DE 2) filed by the plaintiff Citidal Partners, LLC. For the following reasons, the motion will be denied.

The defendant in this matter, Video Display Corporation (VDC), sold its wholly owned subsidiary – Lexel Imaging Systems, Inc. – to Citidal for $3.9 million. Each party argues that the other party has somehow breached various agreements between the parties that governed the sale. And each party argues that it should be in control of Lexel.

VDC's representatives have now entered Lexel and taken physical control of the company and have locked Citidal's representatives out of Lexel's offices. Citidal filed this action seeking an injunction that would require VDC's representatives to leave Lexel's premises and restore Citidal's control of Lexel.

The stock purchase agreement between the parties pretty clearly requires arbitration of all disputes regarding the agreement as long as one party serves written

notice of intent to arbitrate. (DE 1-1, Stock Purchase Agreement, ¶ 10(i)(ii).) By letter dated October 21, 2104, VDC served Citidal notice of its intent to arbitrate disputes over whether Citidal had made the payments required for the purchase of Lexel. (DE 2-2, Oct. 21, 2014 Letter.) Both parties agree that the underlying issue of whether either party has defaulted on its obligations must be arbitrated.

The arbitration clause notwithstanding, the agreement permits the parties to go to court to seek injunctive relief. (DE 1-1, Stock Purchase Agreement, ¶ 10(i)(iii).) Each party has now come to this Court seeking some form of injunctive relief. VDC filed the first action and then voluntarily dismissed it. *Video Display Corporation v. Lexel Imaging Systems, Inc. et al.*, No. 5:14-cv-403-KKC (filed October 23, 2014).

Citidal then filed this action also seeking injunctive relief. VDC objects to this Court's personal jurisdiction over it and also objects to Citidal's entitlement to the requested relief.

I.

VDC is a Georgia corporation. (DE 12, Response at 8.) It argues that this Court cannot exercise personal jurisdiction over it. VDC has not actually filed a motion to dismiss this action for lack of personal jurisdiction under Rule 12(b)(2) but did object to this Court's jurisdiction in its response to Citidal's motion and at the hearing on the motion. In compliance with the Court's order, both parties have briefed the issue. Because VDC requests that this matter be dismissed for lack of personal jurisdiction, the Court will analyze its request under the 12(b)(2) standard.

"The procedural scheme which guides the district court in disposing of Rule 12(b)(2) motions is well-settled." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). The

2

plaintiff has the burden of establishing personal jurisdiction. *Id*. In responding to such a motion, the plaintiff cannot "stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id*.

The court has three options for deciding a 12(b)(2) motion prior to trial: 1) the court can decide the motion upon the affidavits alone; 2) the court can permit discovery to decide the motion; or 3) the court can conduct an evidentiary hearing to resolve any factual disputes. *Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2nd Cir. 1981)).

If all the specific facts which the plaintiff alleges collectively fail to state a prima facie case for jurisdiction, the court need not conduct an evidentiary hearing before dismissing the claim. *Kerry Steel, Inc. v. Paragon Industries, Inc.*, 106 F.3d 147 (6th Cir. 1997). A prima facie showing means that the plaintiff only has to present enough facts to avoid a motion to dismiss. *Welsh v. Gibbs*, 631 F.2d 436, 438 (6th Cir. 1980) (quoting *Data Disc, Inc. v. Systems Technology, Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)). In determining whether the plaintiff has met this burden, the court must consider the pleadings and affidavits in a light most favorable to the plaintiff. *Dean v. Motel 6 Operating L.P.,* 134 F.3d 1269, 1272 (6th Cir. 1998). The court "does not weigh the controverting assertions of the party seeking dismissal." *Theunissen*, 935 F.2d at 1459 (citing *Serras*, 875 F.2d at 1214). A court is not required, however, to "ignore undisputed factual representations of the defendant which are consistent with the representations of the plaintiff." *Kerry Steel*, 106 F.3d at 153.

The determination that the plaintiff has made the prima facie showing of jurisdiction necessary to survive a motion to dismiss does not relieve him from ultimately

3

having to prove jurisdiction by a preponderance of the evidence if the defendant again raises the jurisdictional issue later in the action. *Serras*, 875 F.2d. at 1214 (stating that even if court issues pretrial order denying defendant's 12(b)(2) motion, the defendant may proceed to trial without waiving the defense; a threshold determination that personal jurisdiction exists does not relieve the plaintiff at the trial from proving the facts upon which jurisdiction is based by a preponderance of the evidence); *Dean*, 134 F.3d at 1272 (stating that a defendant "can raise jurisdictional arguments during the trial as well. It is not as if this early determination, with the burden on the plaintiff so low, is the last word on jurisdiction"); *Neogen Corp. v. U.S. Dept. of Justice*, 2006 WL 3422691, at * 7 n.4 (E.D. Ky. 2006).

If there are no factual disputes regarding the jurisdiction issue, then the court need not conduct a hearing but can decide on the pleadings and affidavits whether the plaintiff has established jurisdiction by a preponderance of the evidence. *Dean,* 134 F. 3d at 1272. (stating that where "the reason for not having an evidentiary hearing was that there was no 'real dispute' as to the facts or to the extent of discovery. . . plaintiffs face the same burden as they would if there had been an evidentiary hearing: proof of jurisdiction by a preponderance of the evidence.").

Neither party in this case has requested discovery on the issue of jurisdiction or an evidentiary hearing to resolve relevant factual disputes. Thus, to resolve the jurisdictional issue raised by VDC, the Court will determine whether, taking all of Citidal's allegations as true, it has made the necessary prima facie showing of jurisdiction.

When determining whether personal jurisdiction exists over a defendant in a diversity case, "a federal court must apply the law of the state in which it sits, subject to constitutional limitations." *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir.1994). "[T]he defendant must be amenable to suit under the forum state's long-arm statute and the due process requirements of the Constitution must be met." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996) (citation omitted).

The Kentucky Supreme Court has determined that the state's long-arm statute does not allow for personal jurisdiction to the full extent of the due-process clause. *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011). In other words, there may be situations where a defendant has sufficient contacts with the state to satisfy jurisdiction under the due-process clause but the Kentucky statute still does not permit jurisdiction. *Id.* (citing *Banco Ambrosiano, S.P.A. v. Artoc Bank & Trust Ltd.*, 62 N.Y.2d 65, 476 N.Y.S.2d 64, 464 N.E.2d 432, 435 (1984)).

Thus, in determining whether this Court may exercise personal jurisdiction over a defendant, the Court must first look to whether jurisdiction is permissible under Kentucky's long-arm statute. That statute provides, in relevant part, that a Kentucky court may exercise personal jurisdiction over a person with regards to a claim arising from that person's "[t]ransacting any business in this Commonwealth." KRS § 454.210(2)(a)(1).

Thus, the Court must look to the claims that Citidal makes in its complaint and determine whether those claims arise from VDC transacting business in Kentucky. Neither Citidal nor VDC is a Kentucky corporation. Citidal is a Michigan limited liability company and, as stated, VDC is a Georgia corporation. Neither party alleges that either Citidal or VDC has offices in Kentucky. This dispute centers on which of them should control Lexel

5

pending arbitration. Lexel is a Delaware corporation but its principal place of business is located in Lexington, Kentucky. (DE 1, Complaint, ¶ 1.)

Citidal asserts, after signing the documents governing the sale of Lexel, it became the owner of Lexel. (DE 1, Complaint, ¶ 9.) It asserts that VDC failed to make a working capital contribution to Lexel as required under one of the agreements between the parties and that it failed to make a payment required under another agreement. (DE 1, Complaint, ¶ 12.) Citidal asserts that, in total, VDC now owes it more than $900,000. (DE 1, Complaint, ¶ 12.)

By e-mail dated October 16, 2014, Citidal notified VDC that VDC had breached the agreements. (DE 1, Complaint, ¶ 14; DE 2-2, Ex. A-1.) By letter dated October 21, 2014, VDC responded with its own notice of default alleging that Citidal had failed to make payments when due under the Stock Purchase Agreement between the parties. VDC also notified Citidal of its intent to seek arbitration. (DE 1, Complaint, ¶ 14; DE 2-2, Ex. A-2.) Citidal alleges that it agreed to arbitrate the parties' disputes. (DE 1, Complaint, ¶ 14; DE 2-1, Mem. at 5, 10.)

Nevertheless, on October 23, 2014, VDC filed an action in this Court in which it sought an injunction. The parties agreed to permit VDC to inspect Lexel's books and records and, on November 3, 2014, this Court ordered that such an inspection commence by November 5, 2014. (*Video Display Corporation v. Lexel Imaging Systems, Inc.*, No. 5:14-cv-403-KKC, DE 12.) By letter dated November 17, 2014, VDC informed Citidal that Citidal had breached its obligation to make payments totaling $900,000 for the purchase of Lexel. (DE 1, Complaint, ¶ 18; DE 2-2, Ex. A-5.) VDC further informed Citidal that it had canceled Citidal's stock certificates evidencing Citidal's ownership of 200 shares of Lexel stock and had reissued the stock in VDC's name. VDC stated that Citidal had pledged the stock as

security for the payments required under the agreements between the parties. VDC asserted that it was now the sole owner of Lexel and that Citidal had no ownership in Lexel at all. VDC demanded that Citidal immediately surrender the operation and management of Lexel to VDC. (DE 2-2, Ex. A-5.)

On December 2, 2014, VDC voluntarily dismissed the first action. *Video Display Corporation v. Lexel Imaging Systems, Inc., et al.*, No. 5:14-cv-403-KKC, DE 16.

On December 29, 2014, Citidal then filed this action. It alleges that VDC, with the assistance of two of Lexel's officers, has "locked out" Citidal. It further alleges that VDC's local counsel accompanied certain VDC employees and entered Lexel's premises. (DE 1, Complaint, ¶ 18.) Citidal alleges that VDC then threatened to fire Lexel's employees if they communicated with Citidal or its officers. Citidal alleges that VDC has already fired one Lexel employee "as an example." (DE 1, Complaint, ¶ 18.) Citidal alleges that VDC has hired armed guards to ensure that Citidal remains locked out of the premises. (DE 1, Complaint, ¶ 18.) Citidal alleges that VDC is now accessing Citidal's proprietary and confidential information concerning a certain technology called "Guardian View 360" and is interfering with certain of Citidal's business relationships. (DE 1, Complaint, ¶ 19.)

Citidal asserts a breach of contract claim against VDC alleging that VDC refuses to arbitrate their disputes as the contracts require. Citidal asks for an order requiring VDC to arbitrate the disputes. Citidal also requests an order directing VDC to restore Citidal to control of Lexel.

Thus, Citidal's claim arises from two actions by VDC. First, is VDC's alleged refusal to arbitrate as required under the agreements. This is a nonissue because VDC agrees to arbitrate the disputes between the parties. Second, is VDC's alleged assumption of control over Lexel, a company with its principal place of business in Kentucky. VDC

representatives allegedly entered Lexel's offices in Kentucky and assumed control over all of Lexel's assets and operations. Again, before entering Lexel, VDC demanded that Citidal immediately surrender the operation and management of Lexel to VDC. (DE 1, Complaint, ¶ 14; DE 2-2, Ex. A-5.)

Further, VDC allegedly hired armed guards in Kentucky to keep Citidal's representatives off the Kentucky premises. In other words, Citidal alleges that VDC representatives are now physically on the premises of Lexel in Kentucky and operating and managing the business. As VDC itself has characterized it, "Lexel is 100% owned and under control of. . . VDC." (DE 12-4, November 26, 2014 Letter.) Further, Citidal alleges that VDC and Lexel continue to sell materials and services to each other. These actions clearly constitute transacting business in Kentucky. Because Citidal's claims arise from these actions by VDC, this Court has personal jurisdiction over VDC under Kentucky's long-arm statute.

This Court's exercise of jurisdiction over VDC also comports with federal due process. The following criteria are used to determine personal jurisdiction in the Sixth Circuit:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

"If these criteria are satisfied, jurisdiction is appropriate if maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Tobin v. Astra*

*Pharmaceutical Products, Inc.*, 993 F.2d 528, 543 (6th Cir. 1993) (citations and internal quotation marks omitted).

As discussed, VDC representatives traveled to Kentucky to take over operation and management of Lexel. Citidal alleges that VDC representatives are now physically on the premises of Lexel in Kentucky and operating the business. Further, Citidal alleges that VDC and Lexel continue to sell materials and services to each other. Accordingly, VDC has very purposefully availed itself of the privilege of acting and causing a consequence in Kentucky.

The next issue is whether the plaintiff's cause of action arises from the defendant's activities in Kentucky. This is a "lenient standard." *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002). "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *Id.* (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir.1996)). This factor "requires only 'that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities.'" *Id.* (quoting *Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1091 (6th Cir.1989)).

Citidal's claim for injunctive relief clearly has a substantial connection to VDC's actions in Kentucky. In fact, Citidal asks this Court to order VDC to cease those very actions.

Finally, VDC's acts must have a substantial enough connection with Kentucky to make the exercise of jurisdiction over it reasonable. Where there is a finding of purposeful availment and that the cause of action arose from the defendant's contacts with the forum state, an inference arises that this third factor is also met. *CompuServe*, 89 F.3d at 1268. Factors relevant to the reasonableness inquiry include, "the burden on the defendant, the

interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *Id*.

Here, there is clearly no burden on VDC in litigating this action in Kentucky. As discussed, it was VDC that first brought an action in this Court based on the same disputes that are at issue in this action. VDC cannot now claim that litigating this matter in this Court is unduly burdensome. Further, Kentucky has a legitimate interest in protecting the business interests of its citizens. The outcome of this action will determine which entity controls Lexel while arbitration is pending. Citidal has an obvious interest in obtaining relief and, although Michigan or Georgia may also have an interest, that does not make jurisdiction by this Court unreasonable.

As an alternative to dismissing this action, VDC requests that the Court transfer it to federal district court in Atlanta, Georgia pursuant to 28 U.S.C. § 1404(a) which permits the Court to transfer a civil action "[f]or the convenience of parties and witnesses" to any other district or division where it might have been brought. VDC does not argue that this Court is an *improper* venue, but only that this matter should be transferred for the convenience of the parties.

Courts within the Sixth Circuit have identified nine factors which should be considered when ruling upon a motion to transfer venue under section 1404(a):

> (1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Perceptron, Inc. v. Silicon Video, Inc.*, 423 F. Supp. 2d 722, 729 (E.D.Mich.2006).

The burden is generally placed on the party seeking transfer, and a plaintiff's choice of forum is ordinarily entitled to considerable weight. *MSDG Mobile, LLC v. Am. Fed., Inc.*, No. 1:05-cv-123-M, 2006 WL 515531, at * 6 (W.D.Ky. Feb.28, 2006). As a result, "[u]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Nicol v. Koscinski*, 188 F.2d 537 (6th Cir.1951) (citations omitted). Further, a motion to transfer venue under § 1404(a) cannot simply be an attempt to shift the inconvenience of litigation from the defendant to the plaintiff. *Copeland Corp. v. Choice Fabricators, Inc.*, 492 F.Supp.2d 783, 789 (S.D.Ohio 2005).

VDC points out that the parties agreed to arbitrate any disputes in Georgia. The Court declines to give this great weight in determining which federal court is most convenient for litigation. The fact that the parties agreed to arbitrate in Georgia but neglected to specify any location for litigation to obtain injunctive relief other than "a court of competent jurisdiction" indicates that the parties agreed that litigation could occur in any proper venue. (DE 1-1, Ex. A, Stock Purchase Agreement, ¶ 10(i)(iii).)

Next VDC argues that all of its "accessible sources of proof" are in Georgia and all of its witnesses are located there and, thus, litigation in Kentucky is unduly burdensome. The Court does not find this argument credible. Again, VDC just brought an action itself in this Court based on the very same dispute. Further, this action centers on VDC's occupation, operation and management of Lexel, which is located in Lexington, Kentucky. Thus, some relevant documents and witnesses are most certainly located here. In fact, in the action it brought, VDC sought an accounting of Lexel's financial records and inventory, all of which were located in Lexington. VDC does not raise any other arguments in support of its motion to transfer venue. Considering all of the relevant factors and the plaintiff's choice of forum,

11

the Court does not find that the interest of justice warrants transferring this case to Georgia under 28 U.S.C. § 1404(a).

## II.

The next issue is whether Citidal is entitled to the injunctive relief it seeks. Again, Citidal asks this Court to order two things. First, it asks the Court to order VDC to arbitrate the disputes between them as required under the agreements. Second, it asks the Court to order VDC to transfer Lexel's stock back to Citidal and permit Citidal to again assume control over Lexel. It further asks the Court to order VDC to, among other actions, return all funds or property to Citidal that it allegedly took and to cease communicating with any Lexel employee about the business plans or operations of Lexel and Citidal. (DE 2, Motion.)

In addressing a motion for a preliminary injunction, a court should consider: (1) the likelihood that the movant will succeed on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the public interest will be advanced by issuing the injunction. *See Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.,* 119 F.3d 393, 399 (6th Cir.1997). The agreements between the parties provide that Georgia law controls but Georgia's standard for the issuance of a preliminary injunction is substantively the same as the federal standard. Accordingly, the Court need not decide which standard applies to this motion.

As to Citidal's likelihood of success on the merits, Citidal argues that the only issue before this Court is whether VDC was justified in taking control of Lexel or whether Citidal's control of Lexel should be restored pending the outcome of arbitration. It argues that, pursuant to the agreements between the parties, "all of the underlying issues, such as

who breached the Contracts, who owes whom and, if so, how much, must be arbitrated." (DE 2-1, Mem. at 14.) It argues, "[w]hether Plaintiffs are actually in default or whether VDC actually still owes compensation to Lexel must be arbitrated pursuant to the Contracts." (DE 2-1, Mem. at 15.) VDC agrees that these issues must be arbitrated. (DE 12, Response at 8, 14). Accordingly, the Court will not address the underlying issue of which party defaulted on its obligations, there being no dispute between the parties that the agreements require that issue to be arbitrated and not submitted to this Court for resolution.

Citidal's argument seems to be that, even assuming it is in default, VDC had no right to assume ownership and control of Lexel prior to arbitration. At the hearing on this motion, Citidal explained that its position is that VDC could not assume ownership of Lexel until an arbitrator decides that Citidal is in default. It argued that VDC had no right under the agreements between the parties to unilaterally decide Citidal was in default and assume control over Lexel.

As VDC points out, however, the parties entered into a Stock Pledge Agreement, the very purpose of which was to "give VDC a security interest in all of the stock of [Lexel] until at least ONE MILLION DOLLARS ($1,000,000) of the Purchase Price under the [Stock Purchase Agreement] is paid in full and all other obligations under the [Stock Purchase Agreement] are satisfied." (DE 12-5, Stock Pledge Agreement, Recitals.) In the agreement, both parties recognize that VDC would not sell Lexel under the terms provided in the Stock Purchase Agreement unless Citidal signed the Stock Pledge Agreement. (DE 12-5, Stock Pledge Agreement, Recitals.)

With the Stock Pledge Agreement, Citidal granted VDC a security interest in all of Citidal's shares of Lexel stock and all of its share certificates. (DE 12-5, Stock Pledge

13

Agreement, § § I (A), II.) The agreement provides that VDC shall hold the stock as "security for the payment and performance" of Citidal's obligations to make payments of $1,000,000 under the Stock Purchase Agreement. (DE 12-5, Stock Pledge Agreement, § II.)

The Stock Pledge Agreement further provides that Citidal must deliver all certificates and a stock power executed in blank to VDC and perform any other acts that VDC may reasonably request to establish and maintain a valid security interest in the Lexel stock. (DE 12-5, Stock Pledge Agreement, § III (D).) With the agreement, Citidal granted VDC a power of attorney that was irrevocable until Citidal paid the $1,000,000. The power of attorney permits VDC to exercise "any and all powers which may be exercised by the owners of said stock and to accomplish such actions necessary to transfer and reissue said stock in the name of [Citidal]." (DE 12-5, Stock Pledge Agreement, § IV.)

The Stock Pledge Agreement provides that "[i]f any Event of Default has occurred and is continuing, [VDC] may exercise from time to time the rights and remedies available to it under the Uniform Commercial Code and any other applicable law, in equity, or under any agreement." The U.C.C. provides that, "[a]fter default, a secured party. . . may take possession of the collateral." U.C.C. § 9-609(a)(1). Further, the secured party may proceed "without judicial process, if it proceeds without breach of the peace." U.C.C. § 9-609(b)(2).

Citidal agreed that, if an Event of Default occurred, at VDC's request, it would deliver the stock certificates which were not then in VDC's possession to VDC. (DE 12-5, Stock Pledge Agreement, § V.) The Stock Pledge Agreement does not terminate until Citidal has paid the $1,000,000. (DE 12-5, Stock Pledge Agreement, § VI.)

While Citidal argues that none of its representatives actually signed a stock power, it does not contest that an authorized representative signed the Stock Pledge Agreement on its behalf. Considering the intent and provisions of that agreement, the Court cannot find it

likely that VDC did not have the right to assume ownership of Lexel in the event that Citidal failed to pay the first $1,000,000 for the purchase of the company. For these reasons, Citidal has not established a likelihood of success on the merits of their claim for injunctive relief that would force VDC to leave the premises of Lexel and restore Citidal's control of the company while arbitration is pending.

Nor has Citidal established that it will suffer irreparable injury if its ownership of Lexel is not restored while arbitration is pending. Citidal argues that Lexel's relationships with its customers are endangered because those customers "remain uncertain about the control of Lexel." (DE 2-1, Mem. at 19.) But Citidal has only asked this Court for a temporary injunction that would only temporarily restore its control of Lexel. Thus, the injunction will not resolve uncertainty as to the ultimate control of Lexel.

Further, the Court has no basis to find that Lexel's customers would be any more comfortable with Citidal in control of Lexel than with VDC controlling it. Citidal argues that VDC "drove Lexel to the brink of bankruptcy or dissolution" but the Court cannot make that finding on the record before it.

Citidal argues that Lexel must have a license from the federal government to export products and that it relies on Citidal's license to do so, but VDC has presented evidence that it also has such a license.

Citidal argues that it developed the Guardian View 360 technology and that confidential and proprietary information about it is available on Lexel's computers. It argues that VDC has accessed that information and has communicated about Guardian View 360 with Lexel's customers in some way that has damaged Citidal's ability to market the technology. VDC, in contrast, argues that Lexel – not Citidal – developed Guardian View 360. The Court cannot resolve that issue based on the record before it. Nor can it find

that VDC has irreparably injured Citidal's ability to market the technology. Further, any damages that VDC causes to the sales of this new technology can likely be compensated through money damages.

Citidal argues that VDC may be misappropriating inventory that belongs to Citidal. If so, Citidal can be repaired through money damages. Citidal argues that it has loaned money to Lexel but has no way of determining the status of the loans because it has no access to Lexel's bank accounts and financial records. Like any lender, however, Citidal can be compensated with money damages in the event that Lexel fails to repay the loans.

Finally, the public interest will not be substantially advanced by the granting of an injunction in this case. This is a dispute between two private companies who appear to be on equal footing. To the extent the public has any interest it is in the enforcement of contracts as written between the parties. It appears likely that the parties agreed that VDC could take the actions it has taken in the event of Citidal's default. The public interest is certainly not advanced if this Court should enter an order that is contrary to the parties' agreement.

For all these reasons, the Court hereby ORDERS that the plaintiffs' Motion for Restraining Order or, in the Alternative, for a Temporary Injunction (DE 2) is DENIED and the VDC's motion for leave to file a supplemental response (DE 17) is DENIED as moot.

Dated January 28, 2015.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY